**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

<table>
<tr><td>

MICHAEL D.,

              Plaintiff,

         v.

COMMISSIONER OF SOCIAL SECURITY,

             Defendant.

</td><td>

Civil Action No. 23-1090 (MAS)

**MEMORANDUM OPINION**

</td></tr>
</table>

**SHIPP, District Judge**

    This matter comes before the Court on Plaintiff Michael D.'s ("Plaintiff")[1] appeal from the final decision of the Commissioner of the Social Security Administration (the "Commissioner"), denying his request for disability insurance benefits ("DIB") under Title II of the Social Security Act (the "Act") and supplemental security income ("SSI") under Title XVI of the Act.  The Court has jurisdiction to review this matter under 42 U.S.C. § 405(g) and reaches its decision without oral argument under Local Civil Rule 78.1.  For the reasons below, Plaintiff's appeal is denied.

### I.      BACKGROUND

    In this appeal, the Court must determine whether the Administrative Law Judge's (the "ALJ") finding that Plaintiff was not disabled is supported by substantial evidence. The Court begins with the procedural posture and the ALJ's decision.

---

[1] The Court identifies Plaintiff by first name and last initial only.  *See* D.N.J. Standing Order 2021-10.

A.      **Procedural History**[2]

On January 6, 2021, Plaintiff filed an application for DIB alleging disability beginning June 20, 2018.  (AR 20.)  On January 7, 2021, Plaintiff filed an application for SSI alleging disability also beginning on June 20, 2018.  (*Id.*)  Plaintiff's claims were denied both initially and on reconsideration.  (*Id.*)  Thereafter, Plaintiff filed a written request for a hearing and had an online video hearing before the ALJ on October 19, 2021.[3]  (*Id.* at 20, 38–88.)  On March 29, 2022, the ALJ issued a decision denying Plaintiff's DIB and SSI  applications, finding that Plaintiff is not disabled.  (*Id.* at 17–37.)  Plaintiff appealed that decision.  (*Id.* at 7–11.)  On January 31, 2023, the Administration's Appeals Council affirmed the ALJ's decision.  (*Id.* at 1–6.)

Plaintiff then filed an appeal to this Court. (Compl., ECF No. 1.)  On May 25, 2023, Plaintiff submitted his moving brief in this action. (Pl.'s Moving Br., ECF No. 4.)   The Commissioner opposed (Def.'s Opp'n Br., ECF No. 5), and Plaintiff replied (Pl.'s Reply Br., ECF No. 6).

B.      **The ALJ's Decision**

In her March 29, 2022 written decision, the ALJ concluded that Plaintiff was not disabled under the prevailing Administrative regulations.  (AR 17–37.)  The ALJ set forth the Social Security Administration's five-step sequential analysis for determining whether an individual is disabled.  (*Id.* at 21–22.)  At step one, the ALJ found that Plaintiff "has not engaged in substantial gainful activity" during the relevant time period.  (*Id.* at 22.)  At step two, the ALJ determined that Plaintiff   has   several   severe   impairments:   atrial   fibrillation,   status   post   L4-L5

---

[2] The Administrative Record ("AR") is located at ECF No. 3.  The Court will reference the relevant pages of the AR and will not reference the corresponding ECF page numbers within those files.

[3] The record indicates that the hearing was held virtually due to circumstances presented by the Coronavirus Disease pandemic.  (AR 20.)

laminectomy/discectomy; and status post quadriceps tendon repair.[4]  (*Id.*)  Despite Plaintiff's several severe impairments, the ALJ ultimately determined during her step-three analysis that Plaintiff's impairments did not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (*Id.* at 24–25.)  The ALJ then found that Plaintiff possessed the residual functional capacity ("RFC") to do (or not do) the following:

> [P]erform light work as defined in 20 [C.F.R. §§] 404.1567(b) and 416.967(b) except [Plaintiff] can perform work that requires no climbing ladders, scaffolds, or ropes. [Plaintiff] can perform work that does not require exposure to heavy machinery or heights. [Plaintiff] can occasionally climb stairs and ramps. [Plaintiff] can occasionally perform crouching, crawling, stooping, kneeling, and balancing. [Plaintiff] can occasionally perform work with exposure to environmental pollutants or extremes of temp or humidity. [Plaintiff] can perform work that provides an option to sit/stand at will within the workstation station [sic] while remaining on-task.

(*Id.* at 25.)  At step four, the ALJ found that Plaintiff was unable to perform any past relevant work.

(*Id.* at 30–31.)  At step five, the ALJ found that "[c]onsidering the claimant's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that the claimant can perform."  (*Id.* at 31.)  The ALJ, accordingly, found that Plaintiff was not under a disability from the filing date through the last date insured for the purposes of Plaintiff's DIB and SSI claims.  (*Id.* at 32.)

## II.   **LEGAL STANDARD**

### A.   **Standard of Review**

On appeal from the final decision of the Commissioner of the Social Security Administration, the district court "shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of

---

[4] The ALJ found several impairments—including obesity, hypertension, status post-cardiac ablation, and sleep apnea—to be non-severe.  (AR 23.)

Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g); *Matthews v. Apfel*, 239 F.3d 589, 592 (3d Cir. 2001). To survive judicial review, the Commissioner's decision must be supported by "substantial evidence." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see Morales v. Apfel*, 225 F.3d 310, 316 (3d Cir. 2000). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401 (citing *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). In reviewing the record for substantial evidence, the Court "may not weigh the evidence or substitute [its own] conclusions for those of the fact-finder." *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005) (citation and internal quotation omitted). Even if the Court would have decided differently, it is bound by the ALJ's decision if it is "supported by substantial evidence." *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) (citation omitted). The Court must "review the record as a whole to determine whether substantial evidence supports a factual finding." *Zirnsak v. Colvin*, 777 F.3d 607, 610 (3d Cir. 2014) (citation omitted).

Even amid this deferential standard, the Third Circuit has explained that the review must be a qualitative exercise requiring thorough examination of the ALJ's decision and the record:

> This oft-cited language is not . . . a talismanic or self-executing formula for adjudication; rather, our decisions make clear that determination of the existence *vel non* of substantial evidence is *not* merely a quantitative exercise. A single piece of evidence will not satisfy the substantiality test if the Secretary [of Health and Human Services] ignores, or fails to resolve, a conflict created by countervailing evidence. Nor is evidence substantial if it is overwhelmed by other evidence—particularly certain types of evidence (e.g., that offered by treating physicians)—or if it really constitutes not evidence but mere conclusion. The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham.

4

*Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983) (citation omitted). It is, thus, necessary for the ALJ to analyze all probative evidence and set out the reasons for her decision. *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119–20 (3d Cir. 2000). If the ALJ has not done this and has not sufficiently explained the weight given to the evidence, "to say that [the] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." *Dobrowolsky v. Califano*, 606 F.2d 403, 407 (3d Cir. 1979) (citation omitted). The ALJ must state both the evidence that she considered as well as the evidence that she rejected. *Cotter v. Harris*, 642 F.2d 700, 706–07 (3d Cir. 1981) ("Since it is apparent that the ALJ cannot reject evidence for no reason or the wrong reason, an explanation from the ALJ of the reason why probative evidence has been rejected is required so that a reviewing court can determine whether the reasons for rejection were improper.") (internal citation omitted).

### B. Establishing Disability

To be eligible for DIB or SSI under the Act, a claimant must be unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than [twelve] months[.]" 42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A). For purposes of the statute, a claimant is disabled only if her physical or mental impairments are "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" 42 U.S.C. § 423(d)(2)(A). A physical or mental impairment is one "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

5

Social Security regulations provide a five-step evaluation procedure to determine whether an individual is disabled.  20 C.F.R. § 404.1520(a)(4).  The burden of persuasion rests with the claimant in the first four steps.  *Malloy v. Comm'r of Soc. Sec.*, 306 F. App'x 761, 763 (3d Cir. 2009).

For the first step, the claimant must establish that he has not engaged in any substantial gainful activity since the onset of his alleged disability.  20 C.F.R. § 404.1520(a)(4)(i).  For the second step, the claimant must establish that he suffers from a "severe . . . impairment" or "combination of impairments."  20 C.F.R. § 404.1520(a)(4)(ii).  If the first two steps are satisfied, the third requires the claimant to provide evidence that his impairment "meets or equals" an impairment listed in Appendix 1.  *See* 20 C.F.R. § 404.1520(a)(4)(iii).  If the claimant demonstrates sufficient evidence under the third step, he is presumed to be disabled without considering his age, education, and work experience.  *See id.*; § 404.1520(d).  If he cannot so demonstrate, however, the eligibility analysis proceeds to step four.  *See* 20 C.F.R. § 404.1520(e).

Under the fourth step, the ALJ determines whether the claimant's RFC permits him to resume his previous employment.  *See* 20 C.F.R. § 404.1520(a)(4)(iv).  RFC is defined as that which an individual is still able to do despite the limitations caused by his or her impairments.  20 C.F.R. §§ 404.1545(a) and 416.945; *see Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 121 (3d Cir. 2000) (citing *Hartranft v. Apfel*, 181 F.3d 358, 359 n.1 (3d Cir. 1999)).  Determination of a claimant's RFC is the exclusive responsibility of the ALJ.  20 C.F.R. §§ 404.1527(e)(2), 404.1546, 416.927(e)(2), and 416.946.  If the claimant can continue the work that he performed pre-impairment, then he is not "disabled" and not entitled to disability benefits.  *See* 20 C.F.R. § 404.1520(f).  If the claimant cannot continue in this line of work, the analysis proceeds to step five.  *See* 20 C.F.R. § 404.1520(g).

6

At the fifth step, the burden shifts to the Commissioner to demonstrate that the claimant can perform other work that is consistent with his RFC, age, education, and past work experience. 20 C.F.R. § 404.1520(a)(4)(v), § 404.1560; *Malloy*, 306 F. App'x at 763.  If the Commissioner cannot satisfy this burden, the claimant will receive Social Security benefits.  *See* 20 C.F.R. § 404.1520(g).

The Third Circuit applies a harmless error rule when considering a Social Security appeal. *Rutherford v. Barnhart*, 399 F.3d 546, 553 (3d Cir. 2005) ("We . . . conclude that a remand is not required here because it would not affect the outcome of the case.").  On appeal, Plaintiff bears the burden of showing not merely that the Commissioner erred, but also that the error was harmful. *Romero v. Comm'r of Soc. Sec.*, No. 18-16806, 2020 WL 2301444, at *2 (D.N.J. May 8, 2020).

> At the first four steps, this requires that Plaintiff also show that, but for the error, he might have proven his disability.  In other words, when appealing a decision at the first four steps, if Plaintiff cannot articulate the basis for a decision in his favor, based on the existing record, he is quite unlikely to show that an error was harmful.

*Id.*

## III.  <u>DISCUSSION</u>

Plaintiff appeals the ALJ's written decision and raises two main arguments.  First, Plaintiff alleges that the ALJ's finding as to Plaintiff's RFC was not supported by substantial evidence. (Pl.'s Moving Br. 7.)  Second, Plaintiff alleges that at step five, the ALJ erred in finding that the Commissioner had met her burden of proof in demonstrating that there are a significant number of alternate jobs that Plaintiff is able to perform.  (*Id.*)

As explained below, the Court affirms the ALJ's assessment that Plaintiff is not disabled. This Court finds that there is substantial evidence to support the ALJ's finding as to Plaintiff's RFC, and that there are alternate jobs that Plaintiff is able to perform in the national economy.

A.     **The ALJ's Finding as to Plaintiff's RFC is Supported by Substantial Evidence**

Plaintiff alleges that the ALJ failed to determine Plaintiff's RFC "for all periods at issue" and only made her decision based on Plaintiff's "maximum ability following years of treatment." (Pl.'s Moving Br. 14; *see also* Pl.'s Reply Br. 3.)  Plaintiff continues that the ALJ should have considered Plaintiff's condition "at the beginning period of the claim," when his condition was worse, but "only assess[ed] the [Plaintiff] at the end without considering the evidence of disability prior to any found improvements."  (Pl.'s Moving Br. at 12–14.)

The ALJ must consider all relevant evidence when determining an individual's RFC. *Fargnoli v. Massanari*, 247 F.3d 34, 41 (3d Cir. 2001) (citing 20 C.F.R. §§ 404.1527(e)(2), 404.1545(a), 404.1546).   That evidence includes medical records, observations made during formal medical examinations, descriptions of limitations by the claimant and others, and observations of the claimant's limitations by others.  *Id.*   (citing 20 C.F.R. § 404.1545(a)). Moreover, the ALJ's finding of RFC must "be accompanied by a clear and satisfactory explication of the basis on which it rests."  *Id.*   (citing *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981)). Although the ALJ is not required "to use particular language or adhere to a particular format in conducting [the] analysis," the decision must contain "sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir. 2000)).  The Court "need[s] from the ALJ not only an expression of the evidence s/he considered which supports the result, but also some indication of the evidence which was rejected." *Cotter*, 642 F.2d at 706; *see Burnett*, 220 F.3d at 121 ("Although the ALJ may weigh the credibility of the evidence, he must give some indication of the evidence which he rejects and [the] reason(s) for discounting such evidence.") (citing *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999)).  "[T]he ALJ is not required to supply a comprehensive explanation for the rejection of evidence; in most cases, a

8

sentence or short paragraph would probably suffice." *Cotter v. Harris*, 650 F.2d 481, 482 (3d Cir. 1981). Absent such articulation, the Court "cannot tell if significant probative evidence was not credited or simply ignored." *Cotter*, 642 F.2d at 705.

Applying this standard to the present record, the Court finds that substantial evidence supports the ALJ's RFC determination for the entire period at issue. The ALJ determined Plaintiff's RFC by considering Plaintiff's testimony regarding his pain and symptoms, as well as his daily activities, including that he currently lives in a walk-up apartment on the second floor and attends therapy at the gym. (AR 25–27.) The ALJ considered Plaintiff's previous living arrangement with his parents, in which they lived in a separate second-floor walk-up apartment. (*Id.* at 26, 64–66.) The ALJ considered Plaintiff's medical record between July 2, 2018 and November 22, 2021, noting that "[t]he medical record demonstrates inconsistencies with the claimant's allegations," such that claimant's conditions imposed restrictions but "not to the degree alleged." (*Id.* at 27–29.) The ALJ then assessed medical opinion evidence by specialists and doctors, indicating which opinions she found persuasive and unpersuasive in determining the RFC; when necessary, the ALJ explained her reasoning for why she found specific parts of the evidence unpersuasive. (*Id.* at 29–30.) Finally, the ALJ considered statements by Plaintiff's wife, but found them unpersuasive because Plaintiff's alleged extreme limitations were not supported by the evidence of record. (*Id.* at 30.)

The ALJ, whenever assessing statements not substantiated by objective medical evidence, "consider[ed] evidence in the record to determine if the claimant's symptoms limit the ability to do work-related activities." (*Id.* at 25.) For example, the ALJ cited to the record and explained why the medical opinion provided by a specialist was only partly persuasive:

> The postural limitations did not make sense in light of the medical information within the file. The findings of the postural limitations were not supported by the objective evidence which supported

> greater postural restrictions. Overall, the assessment was persuasive
> only to the light exertional limitation which was consistent with the
> strength testing within the record (Exhibits 6F, 9F, 10F, 12F, and
> 15F).

(*Id.* at 30.).   Separately, the ALJ noted that Plaintiff asserted "[h]e cannot sit for any amount of time[,] 10 or 20 minutes max," but "observed that this assertion was made [after] well over 50 minutes of sitting in the hearing."  (*Id.* at 26.)

A plaintiff does not get a second bite of the apple by merely alleging that the ALJ mischaracterized the evidence of record without "provid[ing] any evidentiary support demonstrating the need for additional functional limitations in the RFC concerning these conditions." *Kowalski v. Kijakazi*, No. 20-1783, 2022 WL 526094, at *8 (M.D. Pa. Feb. 22, 2022) (affirming the ALJ's decision regarding plaintiff's RFC because plaintiff failed to "identify any medical evidence that the ALJ failed to consider [regarding her illnesses]" and the ALJ assessed "how [plaintiff's] conditions and treatment changed over time").  As indicated supra, the Third Circuit applies a harmless error rule.  *See Rutherford v. Barnhart*, 399 F.3d 546, 553 (3d Cir. 2005).  Without any additional detail or evidentiary support indicating what evidence the ALJ should have considered and how "but for the error, he might have proven his disability," Plaintiff fails to meet the burden to compel this Court to remand this matter.  *Romero v. Comm'r of Soc. Sec.*, No. 18-16806, 2020 WL 2301444, at *2 (D.N.J. May 8, 2020).

Accordingly, this Court finds that the ALJ sufficiently articulated reasons for rejecting certain evidence that she did not find persuasive and provided a "clear and satisfactory explanation" for her findings based on the record.  *See Fargnoli v. Massanari*, 247 F.3d 34, 41 (3d Cir. 2001); *see also Hernandez v. Comm'r of Soc. Sec.*, 89 F. App'x 771, 773–74 (3d Cir. 2004) ("The Commissioner need not undertake an exhaustive discussion of all the evidence.").  Plaintiff's allegation that the ALJ did not "determine the Plaintiff's RFC for all periods at issue" and "only

settled at the maximum ability described" by the RFC is thus without merit.[5]  (Pl.'s Moving Br.

14; Pl.'s Reply Br. 3.)

     **B.**     **The ALJ's Finding that Plaintiff Can Perform Other Work Consistent with his RFC, Age, Education, and Past Work Experience is Supported by Substantial Evidence**

Plaintiff next alleges that the ALJ erred in concluding that there are a significant number

of alternate jobs that Plaintiff is able to perform (Pl.'s Moving Br. 7, 15–24); namely, Plaintiff

states that the ALJ improperly found Plaintiff to be "not disabled despite finding [that Plaintiff]

could only perform jobs that had no lifting or standing requirements at the light level." (*Id.* at

18.)  Essentially, Plaintiff seems to allege that the ALJ erred in finding him not disabled because

---

[5] In his brief, Plaintiff states, without further explanation, that "there is still the question of [Plaintiff's] RFC prior to change in age category.  Attention must be drawn to an undiscussed finding by the ALJ." (Pl.'s Moving Br. 12.)  Although it is not the Court's responsibility to guess a party's unexplained allegation, Plaintiff seems to argue that his age was not properly considered in the ALJ's assessment.  The ALJ, however, did in fact take into consideration Plaintiff's age, as well as the change in his age category, when determining Plaintiff's RFC and ultimately finding Plaintiff not disabled.  (AR 31.)  In her decision, the ALJ clarified that "[Plaintiff] was born on March 22, 1971 and was 47 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date. [Plaintiff] *subsequently changed age category to closely approaching advanced age* (20 CFR [§§] 404.1563 and 416.963)." (*Id.* (emphasis added).)  The ALJ then determined that "there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform" after "considering the [Plaintiff's] *age*, education, work experience, and [RFC]." (*Id.* (emphasis added).)

he should have been found limited to "a [s]edentary RFC" as opposed to a "[l]ight RFC."[6]  (*See generally* Pl.'s Moving Br. 15–24; Pl.'s Reply Br. 3.)  Plaintiff, in particular, highlights that the vocational expert's testimony conflicted with the Dictionary of Occupational Titles ("DOT") because the vocational expert improperly added an accommodation—that the work could be performed seated—to the light level work when such job positions require standing as a "core job dut[y]."  (Pl.'s Reply Br. 18.)

---

[6] The Social Security regulations discussing physical exertion requirements define sedentary work and light work as:

> (a) *Sedentary work*. Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

> (b) *Light work*. Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

> "Frequent" means occurring from one-third to two-thirds of the time. Since frequent lifting or carrying requires being on one's feet up to two-thirds of a workday, the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday. Sitting may occur intermittently during the remaining time. The lifting requirement for the majority of light jobs can be accomplished with occasional, rather than frequent, stooping. Many unskilled light jobs are performed primarily in one location, with the ability to stand being more critical than the ability to walk. They require use of arms and hands to grasp and to hold and turn objects, and they generally do not require use of the fingers for fine activities to the extent required in much sedentary work.

20 C.F.R. § 404.1567(a) & (b) (1985); SSR 83-10 (S.S.A. 1983).

In her decision, the ALJ recognized that Plaintiff's "ability to perform all or substantially all of the requirements of ["light work"] is impeded by additional limitations." (AR 31.) During the hearing, the ALJ requested the vocational expert to testify to nationally available jobs that an individual with Plaintiff's age, education, work history, and RFC would be capable of doing at a light exertional level or a sedentary exertional level. (*Id.* at 82–85.) The ALJ then requested the vocational expert's testimony to determine the extent to which the limitations—the option to sit or stand at will—erodes the unskilled light occupational base, and to assess whether jobs exist in the national economy for an individual with Plaintiff's age, education, work experience, and RFC. (*Id.* at 31, 83.) The vocational expert testified that such an individual necessitating a sit or stand option would be able to perform the requirements of nationally available occupations characterized as light work, such as a cashier in a parking lot or garage, gate attendant, or information clerk. (*Id.* at 31–32, 83–84.) The vocational expert noted that the DOT does not address the sit or stand option, but testified that such jobs were available based on her professional experience. (*Id.* at 84.) Regarding the ALJ's question as to whether the jobs would need to be "eroded" to accommodate the sit or stand option, the vocational expert stated that the sit or stand option was "already accounted for" in the job position. (*Id.*) At the end of the hearing, the ALJ asked the vocational expert whether her answers are consistent with the DOT, to which the vocational expert stated that they are, except where previously noted. (*Id.* at 86.) Accordingly, the ALJ concluded in her decision that Plaintiff is not disabled because he "is capable of making a successful adjustment to other work that exists in significant numbers in the national economy." (*Id.* at 32.)

"As a general rule, occupational evidence provided by a [vocational expert] should be consistent with the occupational evidence presented in the DOT." *Zirnsak v. Colvin*, 777 F.3d 607, 617 (3d Cir. 2014) (citing SSR 00-4p, 2000 WL 1898704, at *2 (Dec. 4, 2000)). A vocational

expert may, however, rely on his or her own experience in addition to the DOT when determining whether an individual is capable of performing a given job. *Horodenski v. Comm'r of Soc. Sec.*, 215 F. App'x 183, 189–90 (3d Cir. 2007) (finding the ALJ did not err in relying on a vocational expert who based his opinion on thirty years of his experience); *Butler v. Colvin*, No. 13-7488, 2015 WL 570167, at *9 (D.N.J. Feb. 11, 2015) (noting that Judges in the Third Circuit "have encouraged" vocational experts "to rely on their experiences rather than solely on the DOT"). "To ensure consistency, courts have imposed an obligation on ALJs to '[i]dentify and obtain a reasonable explanation for any conflicts between occupational evidence provided by [vocational experts] . . . and information in the [DOT].'" *Zirnsak*, 777 F.3d at 617 (citations omitted). "Specifically, an ALJ is required to (1) ask, on the record, whether the [vocational expert's] testimony is consistent with the DOT, (2) 'elicit a reasonable explanation where an inconsistency does appear, and (3) explain in its decision 'how the conflict was resolved.'" *Id.* (quoting *Burns*, 312 F.3d at 127). "An ALJ's failure to comply with these requirements may warrant remand in a particular case[,]" but "the presence of inconsistencies does not mandate remand, so long as 'substantial evidence exists in other portions of the record that can form an appropriate basis to support the result.'" *Zirnsak*, 777 F.3d at 617; *Rutherford*, 399 F.3d at 558 (finding that vocational expert testimony provided substantial evidence for the ALJ's step 5 finding, despite minor inconsistencies between the testimony and DOT).

Importantly, the Third Circuit has found that silence on specific issues does not necessarily create a conflict requiring remand, as long as there is no apparent conflict. *See Sanborn v. Comm'r of Soc. Sec.*, 613 F. App'x 171, 177 (3d Cir. 2015) (concluding that the DOT's silence as to sit/stand option does not conflict with jobs identified by the vocational expert); *cf. Kowal v. Saul*, No. 18-1350, 2020 WL 490962, at *3 (W.D. Pa. Jan. 30, 2020) (finding that the ALJ was entitled

14

to rely upon the vocational expert's testimony where such expert testified that her testimony was consistent with the DOT with the exception of, *inter alia*, an off task limitation).

Here, the ALJ properly requested the vocational expert's assistance as to what jobs the Plaintiff can and cannot perform based on his limitations. *See Boone v. Barnhart*, 353 F.3d 203, 210 (3d Cir. 2003), *as amended* (Dec. 18, 2003) ("[W]here 'difficult judgments are involved' in the categorization of a claimant's work ability, [vocational expert] 'assistance is advisable.'"). The ALJ properly clarified with the vocational expert whether any of the jobs would "erode" based on the Plaintiff's sit or stand option. *C.f. id.* ("Consequently, we shall not interpret SSR 83–12 to mandate reversal whenever the ALJ does not set out specific findings concerning the erosion of the occupational base if, as here, the ALJ has received the assistance of a [vocational expert] in considering the more precise question whether there are a significant number of jobs in the economy that the claimant can perform"). Further, the ALJ properly asked, on the record, whether the vocational expert's testimony was consistent with the DOT, to which the vocational expert explained, as noted *supra*, that the DOT is silent about a sit or stand option. (AR 83–84, 86.) In her opinion, the ALJ addressed and resolved the inconsistency:

> Pursuant to SSR 00-4p, I have determined that the vocational expert's testimony was not fully consistent with the information contained in the [DOT] but was based upon the vocational expert's professional experience where it was inconsistent with or not addressed by the DOT. The above jobs already account for being able to change positions because it is part of the job according to the vocational expert.

(*Id.* at 32.)

The Court finds the vocational expert's testimony to be consistent with the DOT and there is no apparent conflict—the ALJ asked the vocational expert about jobs that have the option of sitting or standing, and the vocational expert provided jobs with that option based on her professional experience. *But see Socha v. Saul*, No. 18-10307, 2021 WL 1422887, at *6 (D.N.J.

15

Apr. 15, 2021) (remanding because "an apparent conflict exist[ed] between the ALJ's limitation to two hours of standing/walking and the two light jobs identified by the vocational expert.")  The ALJ provided a reasonable explanation that the vocational expert's professional experience supplemented her testimony "where it was inconsistent or unaddressed by the DOT."  (AR at 32.) *See Gunn v. Saul*, No. 18-10886, 2021 WL 2374348, at *6 (D.N.J. June 10, 2021) ("Accordingly, to the extent that the vocational expert's testimony was inconsistent with the DOT, the vocational expert sufficiently resolved any such conflict by explaining his evaluation of the representative occupations, which reasonably invoked his own experience."); *Knight v. Colvin*, No. 16-1816, 2018 WL 1400077, at *1 n.1 (W.D. Pa. Mar. 20, 2018) ("The ALJ's reliance on this [vocational expert testimonial] evidence was reasonable, especially in light of the fact that the DOT provides the maximum requirements for occupations as generally performed, not the requirements for a specific job in a specific setting. A [vocational expert] can provide more specific information about a specific job, which is precisely what happened here.").

Moreover, separate from whether Plaintiff was miscategorized under the ability to perform the "light work," the Court finds that there is substantial evidence to support the ALJ's finding that Plaintiff is not disabled based on other portions of the record, as explained *supra*, such that Plaintiff's subjective complaints of his pain and symptoms was "not entirely consistent with the medical evidence and other evidence in the record."[7]  (AR 29.)  Again, Plaintiff fails to overcome the Third Circuit's harmless error rule required in a Social Security appeal ruling.  *See Rutherford v. Barnhart*, 399 F.3d 546, 553 (3d Cir. 2005).

---

[7] As noted earlier in this opinion, the ALJ, for example, noted in her decision that despite Plaintiff's allegation that "[h]e cannot sit for any amount of time[,] 10 or 20 minutes max, . . . it is observed that this assertion was made [after] well over 50 minutes of sitting in the hearing."  (AR 26.)

Finally, the Court notes that Plaintiff's counsel failed to object at the hearing that the vocational expert's testimony was inconsistent with the DOT.  (*See generally* AR 38–88.)  *See, e.g., Gunn v. Saul*, No. 18-10886, 2021 WL 2374348, at *7 (D.N.J. June 10, 2021) ("Finally, this Court notes that [p]laintiff's counsel did not object at the hearing to the vocational expert's qualifications or testimony regarding the required sit/stand option and use of a cane." (citations omitted)); *cf. Brown v. Comm'r of Soc. Sec.*, No. 19-2110, 2020 WL 1244186, at *5 (E.D. Pa. Mar. 16, 2020) ("[Plaintiff]'s counsel did not object to either the [vocational expert]'s qualifications or to her testimony in this respect. . . . Therefore, the ALJ did not err in relying on the [vocational expert]'s testimony.").  Accordingly, the Court finds that the ALJ reasonably relied on the vocational expert's testimony when finding at step five that there are jobs that exist in significant numbers in the national economy that Plaintiff could perform.

In light of the above findings, the Court does not find that there are any inconsistencies between the ALJ's findings or the vocational expert's testimony and the DOT that mandate remand.  In short, there is substantial evidence to support the ALJ's finding that Plaintiff was not disabled, as defined in the Social Security Act, during the alleged time period.

## IV.   **CONCLUSION**

For the foregoing reasons, the Court affirms the Commissioner's final decision and denies Plaintiff's appeal.  An Order consistent with this Memorandum Opinion will be entered.

MICHAEL A. SHIPP
UNITED STATES DISTRICT JUDGE